| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X<br><br>ANTHONY NORRIS,<br><br>                Petitioner,<br><br>      v.<br><br>SUPERINTENDENT<br>BRIAN FISCHER,<br><br>                Respondent.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X | FOR ONLINE<br>PUBLICATION ONLY<br><br>MEMORANDUM<br>    AND ORDER<br>06 CV 2190 (JG) |

A P P E A R A N C E S:

    MARTIN G. GOLDBERG
        P.O. Box 236
        Franklin Square, N.Y. 11010
        Attorney for Petitioner

    CHARLES J. HYNES
        King's County District Attorney
        350 Jay Street
        Brooklyn, NY 11201
    By:   LINDA SUSAN BREEN
        Assistant District Attorney
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        Anthony Norris petitions for a writ of habeas corpus challenging his December 17, 2001 conviction in state court in Kings County, following a jury trial, of attempted robbery in the first degree.

        Oral argument of the petition, which was filed *pro se*, was held by teleconference on December 5, 2006. Based on the papers submitted and the argument, I appointed counsel to

represent Norris.  An evidentiary hearing, at which Norris's trial counsel testified, was held on April 30, 2007.  For the reasons set forth below, the petition is denied.

BACKGROUND

A.    The Offense Conduct

On December 5, 2000, at approximately 7:30 p.m., 25 year-old Ayisha Stewart and her six year-old daughter entered a C-Town grocery store on Pennsylvania Avenue in the Crown Heights section of Brooklyn, New York.  She was approached in the produce aisle by a man she did not know, who engaged her in conversation and asked for her telephone number.  Stewart thought the man was attempting to "come on to" her.  After several minutes of unreceptive responses from Stewart, the man walked away, but soon returned and stood in front of her.  He told her, "You have something that I want . . . your chain."  Stewart protested loudly, causing the man to remove a knife and ask her, "Do I have to stab you?"  Stewart saw four to six inches of the blade, and saw that the knife had a brown handle.  Stewart's daughter became frightened, and Stewart shouted at the man.  He responded by telling her he'd been joking.

At that point an employee came out of the back of the store.  Both Stewart and the man stopped shouting at each other, and the employee "looked, turned, and kept on going, minding his business."  Stewart then began to shout again and called for security.  Instead of heading toward the exit of the store, Stewart decided to move to the rear of the store so that the man would not have an opportunity to "hurt me or my child and then run out the door."  For another several minutes, Stewart rushed through the store calling for security.  The man followed her, telling her to "shut up," and that he would "punch her in the face."  Stewart finally reached the front of the store, where a group of people stood watching, none of whom attempted to step

in. Finally, a man "from up top" came, and Stewart asked him to call the police. Her assailant said, "Go ahead. Call the police. I am going to punch you in the face." When Stewart was handed a phone to make the call, the man left the store. The entire incident took approximately 10-15 minutes. Tr. 300-02.

The day after the incident, Detective Stephen Gilliam spoke to Stewart by telephone; she gave a description of the assailant as a black male standing six feet tall, 160 pounds, and about 25 years old. She did not tell Gilliam whether or not she saw a knife, and Gilliam did not ask her. She did not mention seeing a gold tooth in her assailant's mouth. Tr. 315-18.

Three weeks after the incident, Stewart identified Norris in a lineup. When Norris was arrested after the lineup, it was confirmed that he was five feet nine inches tall, 220 pounds, and 32 years old at the time. Tr. 273.

Norris was arrested and charged in Kings County with attempted robbery in the first degree and attempted robbery in the third degree. He was also charged with robbery in the first degree and robbery in the third degree in connection with an incident that took place on November 13, 2000. On that date, a different victim, Rachel St. Vil, was approached in the hallway outside her apartment by a man with a knife who demanded and took her jewelry. St. Vil and another witness to that event identified Norris in the same lineup that Stewart saw.

B.  The Procedural History

1.  *The Trial Court Proceedings*

At trial, the jury heard testimony from St. Vil and the other identifying witness about the November robbery charges, and from Stewart about the events that took place in the C-Town grocery store on December 5. The defense theory was mistaken identity.

Defense counsel highlighted that the day after the December 5 incident Stewart identified her assailant as 6 feet tall, 160 pounds, when Norris is in fact three inches shorter and 60 pounds heavier than she reported. A girlfriend of Norris's also testified that Norris had a gold tooth, Tr. 334, a feature that none of the witnesses had reported. Also, Norris was permitted to stand in front of the jury box at trial and display the gold tooth to the jurors.

The court instructed the jury to conduct independent deliberations with respect to the two events at issue, noting that "although these two incidents are being tried together, you need to deliberate separately as to whether the evidence was sufficient in each of the incidents." Tr. 402-03. The court also told the jury, that "[t]he possibility of human error or mistake, and the possible likeness or similarity of persons are among the elements you must also consider when evaluating testimony as to the identity of the perpetrator." Tr. 398.

On December 17, 2001, the jury deadlocked on the charges stemming from the November incident, leading to the dismissal of those charges. However, the jury found Norris guilty of attempted robbery in the first degree, a Class C felony, in relation to the December

events at the C-Town store. Norris was sentenced to 16 years to life in prison as a persistent violent felony offender.[1]

2. *The Direct Appeal*

On appeal to the New York Supreme Court, Appellate Division, Second Department, Norris denied that he was the man who approached Stewart in the store, and that even if, *arguendo*, he was the man in question, the prosecutor failed to establish that he had the intention to rob Stewart. In particular, he argued (1) the People failed to prove beyond a reasonable doubt that Norris committed attempted robbery in the first degree, and the verdict was against the weight of the evidence; (2) Norris was deprived of a fair trial because a police officer testified that he placed Norris under arrest after the witness viewed the line-up, thereby improperly bolstering witness testimony; and (3) the sentence pursuant to New York's persistent violent felony offender statute was unconstitutional in light of the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

On March 29, 2004 the Appellate Division unanimously affirmed the conviction. *People v. Norris*, 773 N.Y.S.2d 591 (2d Dep't 2004). The court rejected all three of Norris's claims due to procedural default. *Id*. "In any event," the court found, the evidence viewed in the light most favorable to the prosecution "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," and "the verdict of guilt was not against the weight of the evidence." *Id*. at 592 (citing *People v. Contes*, 60 N.Y.2d 620 (1983); *People v. Williams*, 84 N.Y.2d 925 (1994)). The court also found that any possible error in admitting the police officer testimony

---

[1] According to N.Y. Penal Law § 70.08(1)(a), a persistent violent felony offender is a person who stands convicted of a violent felony offense . . . after having previously been subjected to two or more predicate violent felony convictions . . . ." Section 70.08(3)(b) states that "[f]or a class C felony, the minimum period [of imprisonment] must be at least sixteen years and must not exceed twenty-five years."

describing the lineup was harmless, since "the defendant elicited other information from the police officer regarding the same subject and relied on it in pursuit of his defense." *Id*. Finally, the court found that the constitutional challenge to sentencing pursuant to the persistent violent felony offender statute was without merit. *Id.*

Norris's application for leave to appeal to the New York Court of Appeals was denied on June 24, 2004. *People v. Norris*, 3 N.Y.3d 645 (2004) (G.B. Smith, J.).

3. *The State Post-Conviction Motions*

On September 28, 2004, Norris filed a *pro se* motion pursuant to N.Y. Crim Proc. Law § 440.10 for an order vacating his conviction, alleging that trial counsel was ineffective due to a failure to investigate and interview employees of the C-Town store who might have witnessed the crime, and due to a failure to properly investigate the store videotape. On March 22, 2005, the Supreme Court denied the motion, reasoning that Norris had failed to provide a factual basis upon which to conclude that counsel's conduct reflected an absence of reasonable strategy under the circumstances, and that "the only individuals who could have observed any contact between defendant and the complainant were not in a position to witness the actual attempted robbery." *People v. Norris*, No. 2005 - 04601, 46/01, *2 (N.Y. Sup. Ct. March 22, 2005) (Feldman, J.) ("§ 440 Decision"). In addition, the court found it to be "clear from the police report that the store video tape was not in operation at the time of the incident," so the assertion of ineffectiveness was "highly speculative." *Id.* at *2-*3. In a footnote, the court clarified that "defendant's impression [based upon the court's comments at sentencing] that the court did not believe that he was the perpetrator is incorrect." *Id.* at *3 n.1. The Appellate Division and the Court of Appeals both denied leave to appeal the § 440 Decision. *People v.*

*Norris*, No. 2005 - 04601, 46/01 (2d Dep't July 25, 2001) (Ritter, J.); *People v. Norris*, No. 2005 - 04601, 46/01 (November 1, 2005) (Ciparick, J.).

On March 7, 2006, Norris filed a *pro se* motion for a writ of error *coram nobis*, arguing that appellate counsel was ineffective for failing to argue on appeal prosecutorial misconduct in summation. The Appellate Division rejected this claim on the merits in *People v. Norris*, 817 N.Y.S.2d 532 (2d Dep't 2006), *leave to appeal denied by*, *People v. Norris*, 7 N.Y.3d 850 (2006) (Graffeo, J.).

4.  *The Instant Petition*

Norris has submitted this petition pursuant to 28 U.S.C. § 2254, and claims that he was deprived of a fair trial because (1) the state failed to prove beyond a reasonable doubt that he was guilty of attempted robbery in the first degree, and the verdict was against the weight of the evidence; (2) the trial court improperly admitted bolstering testimony by the arresting officer (by allowing him to testify that he arrested Norris after the complaining witness viewed the lineup); (3) the adjudication and sentence pursuant to New York's persistent violent felony offender violated the rule of *Apprendi*; (4) trial counsel was ineffective because he failed to interview a witness from the C-Town store who might have exonerated Norris, failed to investigate the contents of any security videotape made in the store while the events in question were taking place, and failed to seek severance of the charges related to the November 13, 2000 incident prior to trial;[2] and (5) appellate counsel was ineffective because counsel failed to argue that the prosecutor committed misconduct in summation.

---

[2] The part of Norris's ineffectiveness claim related to counsel's failure to seek severance of the charges based on the November events was included in a supplemental submission filed on March 9, 2007.

I heard oral argument on December 5, 2006, during which Norris represented himself via telephone. I concluded that Norris's ineffective assistance of trial counsel claim was deserving of a more complete evidentiary record; Norris's attempted robbery conviction arose out of events involving a single witness, the trial court had arguably expressed misgivings regarding Norris's guilt of that charge, there was potential spillover prejudice resulting from the separate charges that were tried at the same time, and an inconsistent physical description had been provided by the identifying witness. I therefore appointed counsel for Norris to develop the record with regard to whether trial counsel might have produced, had he attempted to do so, a witness to testify that Norris is not the man who was involved in the December 5, 2000 incident that took place in the C-Town grocery store, and why defense counsel failed to interview any of the individuals who were present at C-Town that evening, including employees of the store.

5. *The Evidentiary Hearing*

Supplemental briefing was submitted, and an evidentiary hearing took place on April 30, 2007. At the hearing, Norris's trial counsel, Jay D. Cohen, testified that when Norris retained him approximately one month after his arrest, Norris had already hired an investigator named Patrick Bambino. Cohen also testified that the case file he and his partner received contained a notation, likely made by the appointed attorney Cohen replaced. The note indicated that an investigator had visited the C-Town store, and that when shown a photograph of Norris, the C-Town manager reported that Norris looked like the man who was in the store on December 5, 2000. Cohen did not recall taking steps to investigate further, nor did he recall speaking with Bambino or any other investigator about the case.

With respect to the severance component of Norris' ineffectiveness claim, Cohen testified that he made a deliberate, strategic choice to acquiesce in a single trial. Cohen determined that a joint trial would make it possible to undermine the credibility of all of the identifications because of how the police handled the three eyewitnesses (Stewart from the November events at the C-Town store and the two witnesses from the December incident). Stewart and the two other eyewitnesses had all been driven to the initial lineup in the same vehicle, and Cohen determined that discussions in the car had tainted their identifications. Cohen made this argument to the jury during his summation. Tr. 361.

## DISCUSSION

A. <u>Habeas Corpus Relief</u>

1. *The AEDPA Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only where the state court's adjudication of the federal claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[3]

A state court decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme

---

[3] Though not relevant for the purposes of this petition, habeas relief is also warranted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," or where the petitioner presents clear and convincing evidence to rebut the presumption that state court findings of fact are correct. *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1).

Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Furthermore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 124 S. Ct. 1, 4 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

§ 2254 provides for federal review of state court convictions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2004).

2. *The Exhaustion Requirement*

A federal court should not grant a writ of habeas corpus unless the petitioner has exhausted state court remedies. *See* § 2254(b)(1)(A). To meet this exhaustion requirement, a petitioner must have presented the state courts with "the same claim he urges upon the federal courts," *Picard v. Connor*, 404 U.S. 270, 276 (1971), as a way of giving the state court "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Id*. at 275 (internal citations omitted). In order to have "fairly presented" federal claims to the state courts, a petitioner must have (1) "set forth in state court all of the essential factual allegations asserted in his federal petition," and (2) "placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191-92 (2d Cir.

1982) (en banc). In essence, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id*. at 192.

3. *Procedural Default*

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *See Harris*, 489 U.S. at 261; *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d. Cir.1995). *See also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

In the event that a state appellate court rejects a claim as procedurally defaulted, the claim may only be considered on federal habeas review upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *See Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Coleman*, 501 U.S. at 753 (ellipses in original) (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial

11

disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

B.  Norris's Claims

1.  *The Sufficiency and Weight of the Evidence Claims*

As noted above, the Appellate Division found Norris's sufficiency of the evidence claim to be unpreserved for appellate review and without merit. *See Norris*, 773 N.Y.S.2d at 591-92. The court also found that the verdict was not against the weight of the evidence. *Id.* at 592.

Though New York law grants state appellate courts the right to evaluate the weight of the evidence, *see* N.Y. Crim. Proc. Law § 470.15, and to order new trials on that ground, federal courts on habeas review may properly assess only the sufficiency of the evidence. Specifically, they may determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Garbez v.*

12

*Greiner*, 2002 WL 1760960, at *8 (S.D.N.Y. 2002) ("A federal habeas court cannot address weight of the evidence claims because a challenge to a verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence. Specifically, the weight of the evidence argument is a pure state law claim . . . whereas a legal sufficiency claim is based on federal due process principles.") (citations omitted). A sufficiency claim necessitates a legal inquiry, though it remains "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Therefore, Norris's weight of the evidence is not cognizable on federal habeas corpus review. Furthermore, because the Appellate Division rejected Norris's sufficiency of the evidence claim as unpreserved for appellate review, that claim is procedurally barred. Norris has not demonstrated the cause and prejudice necessary to overcome this bar, nor has he shown that a miscarriage of justice would result if the claim is not reviewed.

The state court also denied Norris's sufficiency of the evidence challenge on the merits. Viewing the evidence presented at trial -- particularly Stewart's eyewitness testimony -- in the light most favorable to the prosecution, it was not unreasonable for the Appellate Division to conclude that a rational trier of fact could have found Norris guilty beyond a reasonable doubt.

    2.    *The Bolstering Claim*

Norris's claim that the arresting officer's testimony about the lineup and arrest of Norris improperly bolstered the identifications does not present a federal constitutional claim. *See Hodge v. Henderson*, 761 F.Supp. 993, 1008 (S.D.N.Y. 1990); *Snow v. Reid*, 619 F.Supp.

579, 582 (S.D.N.Y. 1995) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution.").

In any event, the claim is procedurally barred, *see Norris*, 773 N.Y.S.2d at 592 (rejecting the bolstering claim as unpreserved for appellate review), and Norris has not shown cause for the default, prejudice therefrom or that a miscarriage of justice would result if his bolstering claim is not reviewed here. Finally, the claim fails on the merits. I agree with the state court's assessment that any possible error in admitting the police officer testimony describing the lineup was harmless. At the very least, that determination was neither contrary to nor an unreasonable application of federal law.

3. *The Apprendi Claim*

Like the sufficiency of the evidence and the bolstering claims, Norris's claim that his sentence was unconstitutional is procedurally barred. *Norris*, 773 N.Y.S.2d at 592 (rejecting the sentencing claim as unpreserved for appellate review). Norris has not demonstrated the cause and prejudice necessary to create an exception to the procedural bar, and has not established that a failure to consider the claim would result in a miscarriage of justice.

The state court also rejected the claim on its merits. *Id.* Even if I were to review the *Apprendi* claim de novo, without applying the deference that AEDPA requires upon review of a state court ruling on the merits, I would not grant habeas corpus relief on that ground.

In *Apprendi*, the Supreme Court struck down a New Jersey hate crime sentence enhancement statute, holding that the fact determination authorizing an increased maximum sentence, *i.e.*, that the defendant had been motivated by racial discrimination, must be made by the jury, not the sentencing court. *See Apprendi*, 530 U.S. at 482-85, 492-97. However, the

14

Court specifically held that the jury trial right does not apply to sentence enhancements based solely on prior convictions. *Id*. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); s*ee also Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998).

Norris argues that the sentencing court violated *Apprendi* when it found he had committed two prior violent felonies, making him subject to New York's persistent violent felony offender enhancement. However, an enhancement based on § 70.08 relies solely upon the court's finding of prior convictions. The enhancement thus falls within the exception to the *Apprendi* rule. Accordingly, the sentencing court did not violate Norris's Sixth Amendment jury trial right when it imposed an enhanced sentence pursuant to New York's persistent violent felony offender statute.

4. *Ineffectiveness of Trial Counsel*

Counsel is ineffective pursuant to the Sixth Amendment when he or she has made errors so serious that the Sixth Amendment guarantee to "counsel" has not been fulfilled and when those errors have prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. A reviewing court should note that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful,

15

counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The state court considered the merits of Norris' argument -- contained in a § 440 motion for an order vacating his conviction -- that his trial counsel, Jay D. Cohen, was ineffective due to a failure to adequately investigate. As described above, the court rejected the argument on the merits. Cohen's testimony before me on April 30, 2007 confirms that the state court's ruling on the ineffectiveness claim was reasonable and correct. Cohen testified that the case file he received when Norris retained him indicated that the manager of the C-Town store had identified Norris as looking like the man who accosted Stewart on December 5, 2000. Trial counsel also testified, as did Norris, that Norris had hired an investigator prior to retaining Cohen. Based on this information, it was reasonable for Cohen to believe that the investigator Norris hired had visited the C-Town store, had spoken with the manager there, and had concluded that there were no available witnesses who would testify that Norris was not the assailant on December 5, 2000. Furthermore, Norris has presented no evidence contradicting the state court's finding that there was no store surveillance video of the relevant events. In light of these circumstances, counsel's performance was not "outside the wide range of professionally competent assistance." *Strickland* at 690.

Norris's argument that trial counsel was ineffective due to a failure to seek severance of the charges stemming from the November 13, 2000 event is raised for the first time on this habeas petition. The claim is therefore unexhausted. Furthermore, since Norris failed to raise this issue in his direct appeal or in his § 440 motion, he no longer has a means to exhaust

the argument in state court. I may therefore deem the claim to be exhausted for the purposes of federal habeas review, yet reject it as procedurally barred due to the state court default. *See Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (where it is clear that the state court would hold that an unexhausted claim is procedurally barred, federal court may deem the claim exhausted for the purposes of habeas review).

Even if I were permitted to examine the severance claim, I would reject it. Cohen reasonably concluded that trying the charges related to both incidents together would make it easier for him to undermine both cases. Counsel built the strategy around the unusual fact that the eyewitnesses to the separate events were placed together by the police before viewing the lineup. Trial counsel suggested in his summation that the lineup identifications of Norris were tainted because the witnesses of the two events had the opportunity to discuss the assailant before making the identifications. That the strategy might have been employed twice -- in separate trials -- does not alter the reasonableness of counsel's choice to try to undermine both cases at once. Indeed, the split verdict he obtained seems to confirm the reasonableness of the strategy. In any event, pursuing it did not constitute ineffective assistance of counsel.

5. *Ineffectiveness of Appellate Counsel*

Norris argues that appellate counsel was ineffective in failing to raise objections to the prosecutor's summation at trial. He asserts that this issue was "more viable than the issues appellate counsel raised in his direct appeal brief." Pet. at 11. According to Norris, the summation "denigrate[d] the defense" because it included comments which (1) "served to cast aspersions and disrepute upon the defendant's case;" (2) vouched for the credibility of

17

prosecution witnesses; (3) made comments that shifted the burden of proof; and (4) invited the jury to speculate or refer to matters not in evidence. *Id*.

In its denial of this claim, the Appellate Division stated simply, "The appellant has failed to establish that he was denied effective assistance of appellate counsel." *Norris*, 817 N.Y.S.2d at 532-33 (citing *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983) (though an appointed attorney must advocate client's cause vigorously and may not withdraw from a nonfrivolous appeal, he or she need not raise every nonfrivolous *issue* suggested by client on appeal)).

That determination was hardly an unreasonable application of federal law. Even assuming Norris had raised nonfrivolous arguments regarding the prosecutor's summation, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client," would disserve the goal of "vigorous and effective advocacy." *Jones*, 463 U.S. at 754.

Moreover, Norris's assertion of prosecutorial misconduct in summation would hardly have presented a promising issue for review on appeal. In New York, a prosecutorial misconduct claim must show an "obdurate pattern of inflammatory remarks throughout the prosecutor's summation," or that the prosecutorial misconduct is so "pervasive" and "egregious," and the "prosecutor's disregard of the court's rulings and warnings is . . . deliberate and reprehensible." *People v. D'Alessandro*, 591 N.Y.S.2d 1001, 1005 (1st Dep't 1992) (citing *People v. Ortiz*, 497 N.Y.S.2d 678 (1st Dep't 1986); *People v. Sandy*, 499 N.Y.S.2d 75 (1st Dep't 1986)). The claim must also show that the improper summation prejudiced the defendant. *People v. Brosnan*, 32 N.Y.2d 254 (1973) ("The rule is that an improper summation . . . should be assessed for its prejudicial effect, and it requires greater impropriety to produce that effect in a

stronger case."). *See also United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.").

Norris cites the prosecutor's comments that the defense was "nonsense," Tr. 381, and that defense counsel had attempted to "trick the victim who testified." Tr. 378. These are typical and unobjectionable forms of argument; neither rises to the level of misconduct. Nor did it violate Norris's rights when the prosecutor suggested to the jury that one could walk to nearby Fulton Street and obtain a gold tooth in ten minutes. Tr. 379. Finally, even if such comments could have formed the basis of a prosecutorial misconduct claim, trial counsel did not object to them. The belated claims not having been preserved for appellate review, appellate counsel can hardly be considered ineffective for not pursuing them on direct appeal.

CONCLUSION

For the foregoing reasons, the petition is denied. As Norris has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 15, 2007
      Brooklyn, New York